UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE WILSHER,

    Plaintiff,

v.                                                                                  Case No. 04-72861

THE KROGER CO. OF MICHIGAN,                          Honorable Patrick J. Duggan
a domestic, for-profit corporation, and
UNITED FOOD & COMMERCIAL
WORKERS UNION LOCAL 876,
Jointly and Severally,

    Defendants.
_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on April 28, 2005.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

On July 29, 2004, Plaintiff Diane Wilsher filed a three-count Complaint against The Kroger Co. of Michigan (hereinafter "Kroger") and United Food & Commercial Workers Union Local 876 (hereinafter "UFCW 876") in this Court after Plaintiff was terminated from her employment at Kroger. Plaintiff's Complaint alleges: (I) that Defendant Kroger breached the collective bargaining agreement and Defendant UFCW 876 breached its duty of fair representation pursuant to the Labor Management Relations Act, 29 U.S.C. § 185

("LMRA"); (II) that Defendant Kroger violated the Michigan Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS ANN. § 37.2101, *et. seq.* ("Elliott-Larsen"), by discriminating against Plaintiff based on her sex; and (III) that Defendant Kroger violated Elliott-Larsen by discriminating against Plaintiff based on her age.  Presently before the Court are Defendants' Motions for Summary Judgment, filed February 15, 2005.  A hearing was held on April 27, 2005.

## I. Background

Plaintiff began working for Kroger in 1978 as a stockperson until she was terminated on December 3, 2003.  During the last fifteen years of her employment with Kroger, Plaintiff worked as a Night Stock Leader, supervising employees during the night shift, from 10:00 p.m. to 6:30 a.m.  No management was present during the night shift.

### A. Defendant Kroger's Policies

Throughout her employment, Plaintiff was a member of UFCW 876.  The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement (CBA) between Defendant Kroger and Defendant UFCW 876.  The CBA provides employees with an opportunity to challenge Kroger's employment decisions through grievance procedures.  Under the CBA, Plaintiff was bound by Kroger's work rules and policies including "Lunch Periods and Rest Periods," which provides, in pertinent part:

> **A.   Lunch Periods**
> Employees shall be granted one-half (½) hour for lunch.  By mutual consent this may be one (1) hour in individual cases.  The lunch period shall be scheduled so that no employee shall be required to start his lunch period earlier than three (3) hours after his scheduled starting time, and no employee shall be required to work more than five (5) hours before starting his lunch period.

Both Kroger and UFCW 876 interpret this provision to require Kroger employees to schedule and take a thirty minute lunch break. (Kittleson Dep. at 11-12; Johnson Dep. at 13).

Plaintiff contends that the Lunch Break Policy set out above permits employees to elect not to take their scheduled lunch breaks. (Wilsher Dep. at 72-73). According to Plaintiff, she could refuse to take a lunch break even if a store manager instructed her to do so "because it wasn't a Kroger policy." (*Id.* at 99-101).

However, the CBA also explains that Kroger's "management can establish and maintain rules and regulations covering the operation of the stores, a violation of which shall be among the causes for discharge . . . ." (CBA at 4). Moreover, the Employee Handbook provides that violating any Kroger policies or rules "will be sufficient grounds for disciplinary action ranging from reprimand to immediate discharge, depending upon the seriousness of the offense in the judgement of management." (Employee Handbook at 11).

**B. Plaintiff's Violations of the Lunch Break Policy**

While she was Night Stock Leader, Plaintiff admits that she consistently skipped her lunch break and left work half an hour earlier. (Wilsher Dep. at 34-35, 117). She also admits that she permitted other night shift employees under her supervision to do the same. (*Id.* at 132-34, 139). Without taking the lunch break, Plaintiff and other night shift employees were able to earn overtime (*id.* at 69-70) or leave work earlier (*id.* at 102).

From June through November 2003, Plaintiff was working as the Night Stock Leader at Store 700. Christopher Sobczak was the manager at Store 700 at that time. According to Sobczak, in August 2003, he received a directive from Kroger's Human Resources/Operations Department to enforce the Lunch Break Policy. (Sobczak Dep. at 13-

3

17; Sobczak Aff. ¶ 6). Sobczak contends that union representatives told him they were receiving complaints from other employees at Store 700 that Plaintiff was not taking lunch breaks. (Sobczak Aff. ¶ 5).

On August 25, 2003, Sobczak posted a written notice in the store to remind employees about the Lunch Break Policy, which read:

> All breaks and lunches must be taken and recorded (via the time clock) in accordance with company policy and the Union contract.
>
> If your shift is 6.25 hours or more you must take a lunch!!!
>
> There are no exceptions to this rule.
>
> Disciplinary action will be taken for anyone who violates this policy. Such action will follow the guidelines established in the Attendance Policy.
>
> **This policy will be fully enforced effective 10/19/2003.**
>
> Thank you!!!

(Kroger's Mot. Ex. K (emphasis in original)).

Plaintiff admits that she read this notice, but that she disagreed with it. (Wilsher Dep. at 37-40). Plaintiff wrote the following note to Sobczak: "I feel the ½ [hour] is my time. It's not a Kroger policy nor is it in the contract that I have to take a lunch and its [sic] not a state or federal law." (Kroger's Mot. Ex. L). Sobczak wrote the following note to Plaintiff:

> The law has nothing to do with it. The employee handbook and the contract both say I must provide all employees with a 30 minute break period . . . If you don't start taking them, and making sure your crew is taking them I will have no other choice but to start following the progressive discipline that is laid out in the attendance policy. Not taking a lunch is not an option.

(Kroger's Mot. Ex. M).

After receiving this note, Plaintiff still refused to take lunch breaks. On September 2,

4

2003, Sobczak issued Plaintiff a Significant Incident Reminder (SIR) for her failure to take lunch breaks on August 26, 28, 29, 30, 31 and September 1, 2003. (Kroger's Mot. Ex. N). The Reminder warned that the next incident would result in Plaintiff receiving a Constructive Advice Record (CAR) and ninety-day probation. (*Id.*).

Plaintiff failed to take a lunch break during her night shift on September 2, 2003. (Kroger's Mot. Ex. O). On September 3, 2003, Sobczak issued Plaintiff a CAR and placed her on a ninety-day probation. (*Id.*). In addition, Sobczak wrote Plaintiff a letter explaining that she "MUST take a lunch." (Kroger's Mot. Ex. P).

On October 25, 2003, Sobczak wrote Plaintiff a note reminding her to take lunch breaks and to make sure that all night shift employees under her supervision also take lunch breaks. (Kroger's Mot. Ex. Q).

On November 8, 2003, Sobczak issued Plaintiff a SIR for her refusal to take lunch breaks on November 2, 3, 4, 6 and 8, 2003. (Kroger's Mot. Ex. R). The SIR warned Plaintiff that the next incident would result in a CAR and a ninety-day probation. (*Id.*).

On November 12, 2003, Sobczak issued Plaintiff a CAR and placed her on a ninety-day probation for refusing to take lunch breaks on November 9, 10, and 11, 2003. (Kroger's Mot. Ex. S). The CAR explained: "Employee is placed on 90 day probation. Two (2) additional incidents within that 90 day period will result in a second CAR, a new 90 day probation and a 3-day suspension." (*Id.*).

On November 15, 2003, Plaintiff received a second CAR for refusing to take lunch breaks on November 13, 14 and 15, 2003, which notes: "Employee is being given one last chance to correct before we proceed to the next step. Two (2) additional incidents within 90

5

days will result in a CAR, a new 90 day probation and a 3 day suspension." (Kroger's Mot. Ex. T).

On November 17, 2003, Sobczak issued a third and final CAR to Plaintiff for refusing to take lunch breaks on November 16 and 17, 2003. (Kroger's Mot. Ex. U). Plaintiff was suspended for three days. (*Id.*). The CAR also provided that: "The next two (2) additional incidents within 90 days will result in a CAR and the employee being suspended pending advisability of discharge." (*Id.*).

On November 24, 2003, Plaintiff was given a CAR and was suspended pending advisability of discharge for refusing to take lunch breaks on November 23 and 24, 2003. (Kroger's Mot. Ex. V). On December 3, 2003, following an investigation of the events that led to Plaintiff's suspension, Plaintiff was terminated. (Kroger's Mot. Ex. W).

### C. Plaintiff's Grievance

Plaintiff did not file any grievances over the written warnings or suspensions she received prior to her termination. On December 3, 2003, Plaintiff filed a grievance under the CBA challenging Plaintiff's termination. (Kroger's Mot. Ex. X). Grievances are negotiated between Kroger and UFCW 876 at three different levels: Step 1, Step 2, and Step 3.

At the Step 1 grievance meeting Plaintiff was told that she had to take a lunch break. (*See* Wilsher Dep. at 49-50).

Plaintiff, Union Steward Cheryl Janascheck, Union Business Agent Sharon Larry, Sobczak, and Kroger Human Resources Representative Rose Smith attended the Step 2 grievance meeting. (Smith Dep. at 33-34). Plaintiff was again told that she was required to

take lunch breaks. (Wilsher Dep. at 49-50). Plaintiff claimed that other employees of Store 700 were taking only fifteen minute lunch breaks. (Wilsher Dep. at 51). According to Union Business Agent James Ristich, "I asked [Sobczak] if he was, in fact, disciplining everybody that was not taking a lunch. . . . He said he was." (Ristich Dep. at 16). Ristich contends that he never discussed with Sobczak whether there were employees who were allowed to take a fifteen minute lunch break instead of the half hour lunch break. (*Id.* at 17).

On January 21, 2004, the final Step 3 grievance meeting was attended by Plaintiff, Janascheck, Ristich, and Smith. (Smith Dep. at 35-36). Plaintiff was presented with a written Last Chance Agreement allowing Plaintiff to return to work provided that: "Forward going, Diane Wilsher understands that she is solely responsible for her actions. Any future instances of similar behavior for which Ms. Wilsher was suspended, will result in immediate discharge." (Kroger's Mot. Ex. Y).

After reviewing the Last Chance Agreement, Plaintiff stated that she "had to have time to think about it." (Wilsher Dep. at 54). Smith told Plaintiff and Ristich that they had until January 24, 2004 to accept the Agreement. (*See id.* at 54). Ristich advised Plaintiff that Kroger's position was correct; she was required to take lunch breaks. (*Id.* at 65-66). Plaintiff did not sign the Last Chance Agreement.

Plaintiff sought to process her grievance to arbitration. On February 17, 2004, Plaintiff received a letter from the President of UFCW 876 advising Plaintiff that "after careful review of all the circumstances, based upon the conclusion that the grievance lacks merit for arbitration," UFCW 876 would not process Plaintiff's grievance to arbitration. (Resp. Ex. 11).

7

On March 3, 2004, Plaintiff wrote a letter to the President of UFCW 876 asking how to exhaust her internal union appeal procedure. (UFCW 876's Mot. Ex. 21). Plaintiff contends that Defendant UFCW 876 failed to respond to Plaintiff's request to know what steps she needed to take in order to exhaust her internal union appeal procedure. (Resp. Ex. 13). Ristich, however, in a letter dated March 16, 2004, in response to her "letter of March 3, 2004," offered to try to persuade Kroger to reinstate the Last Chance Agreement. (UFCW 876's Mot. Ex. 22). Plaintiff never responded to Ristich's offer. (Wilsher Dep. at 66).

## II.   Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of

8

evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

Defendants' Motions for Summary Judgment seek to dismiss all three counts of Plaintiff's Complaint. At the hearing, counsel for Plaintiff conceded that counts II and III of Plaintiff's Complaint, Plaintiff's Elliott-Larsen claims, should be dismissed. At issue, therefore, is whether Plaintiff's hybrid claim for breach of contract against Defendant Kroger and breach of duty of fair representation against Defendant UFCW 876 should be dismissed.

A hybrid suit brought under § 301 of the LMRA "implicates the interrelationship among a union member, his union, and his employer." *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). To prevail against Defendants, Plaintiff must prove "***both*** (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Id.* (emphasis added). Here, even when viewed in the light most favorable to Plaintiff, Plaintiff has failed to establish *either* that Defendant Kroger breached the CBA *or* that Defendant UFCW 876 breached its duty of fair representation.

#### A. Plaintiff's Breach of Contract Claim against Defendant Kroger

Plaintiff's Complaint alleges that "Defendant Kroger breached its contract of employment when it discharged Plaintiff without just cause for said action." (Compl. ¶ 19).

9

The CBA states that "employees *shall be granted* one-half (½) hour for lunch." (CBA at 20 (emphasis added)). Both Kroger and UFCW 876 representatives testified that the CBA required each employee to take a thirty minute lunch break. (Kittleson Dep. at 11-12; Johnson Dep. at 13-14; Ristich Dep. at 19). However, the express language of the Lunch Break Policy does not state that employees are required to take a thirty minute lunch break; rather, Defendant Kroger is required to grant employees a thirty minute lunch break. In this Court's opinion, the language of the Lunch Break Policy, standing alone does not require Plaintiff to take a thirty minute lunch break.

> However, the CBA also sets out "Management Rights" and provides:
>
> The management of the business and the direction of the working forces, including the right to plan, direct and control store operations . . ., and the right to establish and maintain rules and regulations covering the operation of the stores, a violation of which shall be among the causes for discharge, are vested in the Employer, provided, however, that this right shall be exercised with due regard for the rights of the employees and provided further that it will not be used for the purpose of discrimination against any employee.

(CBA at 3-4).

> Here, Manager Sobczak posted the following notice in Store 700 on August 25, 2003:
>
> All breaks and lunches must be taken and recorded (via the time clock) in accordance with company policy and the Union contract.
>
> If your shift is 6.25 hours or more you must take a lunch!!!
>
> There are no exceptions to this rule.
>
> Disciplinary action will be taken for anyone who violates this policy. Such action will follow the guidelines established in the Attendance Policy.
>
> **This policy will be fully enforced effective 10/19/2003.**
>
> Thank you!!!

10

(Kroger's Mot. Ex. K (emphasis in original)).

The Court believes that this notice falls within Manager Sobczak's "Management Rights" because it is a rule or regulation covering the operation of Store 700. Whether or not the thirty minute lunch break requirement was uniformly enforced across all Kroger stores is irrelevant where, as here, the manager at a Kroger store has set out a rule covering operation of his or her store.

Despite the posting of this notice, Plaintiff continued to leave early without taking thirty minute lunch breaks. Under the terms of the CBA, Plaintiff could be discharged for violating a store rule or regulation. (*See* CBA at 3-4). After first receiving a warning, Kroger administered progressive discipline pursuant to the CBA. Plaintiff received all four levels of progressive discipline before she was discharged. (*See* Kroger's Mot. Exs. R, S, T, U, & V).

Plaintiff contends that Manager Sobczak was not disciplining other Store 700 employees who were taking fifteen minute lunch breaks or no lunch break at all. Sobczak testified that he uniformly required all Store 700 employees working in excess of six and a quarter hours to take a thirty minute lunch break. (Sobczak Dep. at 18). He further contends that at the time he disciplined Plaintiff, he believed that he was uniformly requiring thirty minute lunch breaks. (*Id.* at 19). However, Sobczak testified that at Plaintiff's Step 2 grievance meeting, it was brought to his attention that there were employees not taking a full thirty minute lunch. (*Id.*). Furthermore, Plaintiff has produced time sheets showing that other Store 700 employees were skipping their lunches or taking only fifteen minute lunches. Plaintiff contends that this creates an issue of fact as to whether Sobczak was aware that

11

other employees were violating the lunch break policy.

The record shows that after Sobczak posted the lunch break notice after hearing form union representatives that other union members were complaining that Plaintiff was skipping her lunch breaks. (Sobczak Aff. ¶ 5). In addition, after Sobczak posted the notice, Plaintiff wrote the following note to Sobczak: "I feel the ½ [hour] is my time. It's not a Kroger policy nor is it in the contract that I have to take a lunch and its [sic] not a state or federal law." (Kroger's Mot. Ex. L). In was not unreasonable for Sobczak to assume that Plaintiff intended to continue to disobey the rule, and as a manager, it was not unreasonable for Sobczak to closely monitor an employee who indicated that she disagreed with the rule.

Moreover, Plaintiff was the Night Stock Leader which meant, according to Sobczak: "As a department head, it is your job to make sure all of your employees are taking a lunch. It is also your job to set the example!!" (Kroger's Mot. Ex. Q).

In addition, Plaintiff admits that other Store 700 employees were disciplined for violating the rule. (Wilsher Dep. at 66-67). Plaintiff testified that she was the only Store 700 employee who continued, after the posting of this notice, to skip her lunch break entirely. (*Id.* at 67-68). Plaintiff contends that the other employees began taking fifteen minute lunch breaks. (*Id.*).

The record shows that when Sobczak was aware that other Store 700 employees were not taking lunches, he disciplined them. In addition, there is no evidence to suggest that Sobczak was *aware* that Store 700 employees were taking fifteen minute lunches until after Plaintiff's Step 2 grievance meeting. Consequently, by applying progressive discipline to Plaintiff for not taking lunch breaks, this Court does not believe that Kroger breached the

12

CBA.

### B. Plaintiff's Breach of the Duty of Fair Representation Claim against Defendant UFCW 876

In addition, the Court does not believe that Defendant UFCW 876 breached its duty of fair representation. To establish that UFCW 876 breached its duty of fair representation, Plaintiff must make an affirmative showing that the union acted in a manner that is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 916 (1967). A union's action in representing a member can be said to be arbitrary only if, "the union's behavior is so far outside of a 'wide range of reasonableness' that it is wholly irrational or arbitrary." *Airline Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78, 111 S. Ct. 1127, 1136 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S. Ct. 681, 686 (1953)). At least some facts must be pleaded "to support the legal conclusions that the Union acted arbitrarily and in bad faith . . . ." *Palnau v. Detroit Edison Co.*, 301 F.2d 702, 705 (6th Cir. 1962); *see also Balowski v. Int'l Union*, 372 F.2d 829, 835 (6th Cir. 1967) (finding that "allegations of a complaint alleging the breach of a union's duty of fair representation must contain more than conclusory statements alleging discrimination.").

In this case, Plaintiff has not pleaded any facts showing that UFCW 876 acted arbitrarily or in bad faith in deciding not to take Plaintiff's grievance to arbitration. Plaintiff's Complaint alleges that "Defendant Local Union, in refusing to process Plaintiff's grievance to arbitration, constitutes an act of arbitrary administration of the grievance procedure . . . ." (Compl. ¶ 14(M)). The evidence in the record shows that after Plaintiff was disciplined for her repeated violations of the Lunch Break Policy, UFCW 876 negotiated a

13

Last Chance Agreement. (Kroger's Mot. Ex. Y). Plaintiff rejected this Last Chance Agreement "[b]ecause [she] felt that [she] was . . . suspended for something that was not a Kroger or union policy." (Wilsher Dep. at 55). When Plaintiff sought to arbitrate her grievance, UFCW 876 found that Plaintiff's grievance was meritless. (Kroger's Mot. Ex. BB).

Ristich testified that after reading the facts of Plaintiff's grievance at the executive board meeting, there was no discussion, and the board took less than one minute to decide not to arbitrate Plaintiff's grievance. (Ristich Dep. at 35-36). Plaintiff contends that the fact that UFCW 876 took less than one minute to decide not to arbitrate Plaintiff's grievance supports her argument that UFCW 876 acted arbitrarily. However, this could also mean that UFCW 876 felt that Plaintiff's belief that she should not have to take a lunch break did not warrant more than one minute of consideration because UFCW 876 believed the rule was enforceable.

In fact, UFCW 876 interprets the lunch break provision to require Kroger employees to schedule and take a thirty minute lunch break. (Johnson Dep. at 13-14; Ristich Dep. at 19). In this Court's opinion, there was no reason for UFCW 876 to go against its interpretation of the CBA and arbitrate Plaintiff's contrary interpretation.

Based on the evidence in the record, even when viewed in the light most favorable to Plaintiff, the Court believes that UFCW 876's decision not to arbitrate Plaintiff's grievance was within the "wide range of reasonableness." Accordingly, count I of Plaintiff's Complaint is dismissed.

For the reasons set forth above,

14

**IT IS ORDERED** that Defendants' Motions for Summary Judgment are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Jamil Akhtar, Esq.
Terrence J. Miglio, Esq.
William J. Karges, Esq.